CHARLES WM. ROBERTS, Judge Pro Tern.
This suit for damages for personal injuries arose out of an accident which occurred on May 14, 1984, when Effie Melan-con (hereinafter Plaintiff) missed a step and fell when she was leaving the customer lounge of J.P. Thibodeaux, Inc., (hereinafter Thibodeaux), an automobile dealership in New Iberia, where she had taken her car for servicing. The suit was against Thibodeaux and its alleged insurer, Intercontinental Insurance, Inc. (hereinafter Intercontinental). Thibodeaux and Intercontinental filed third party demands for indemnification against DeCourt Industries, Inc. (hereinafter DeCourt), the alleged de *257 signer, and Giroir Home Builders, Inc. (hereinafter Giroir), the builder, and Gir-oir’s insurer, Commercial Union Insurance Co. (hereinafter Commercial). DeCourt was subsequently dismissed from the suit by Thibodeaux. Intercontinental was also dismissed on its motion for summary judgment since it established that it did not insure Thibodeaux at the time of the accident. Plaintiff amended to add Giroir and Commercial as defendants.
The case was tried before a jury on both theories of strict liability and negligence. After very thorough instructions by the trial judge, the jury returned a special verdict finding that the step-down from the customer lounge did not pose an unreasonable risk of injury to others; that Thibo-deaux was not at fault which was a cause in fact of the injuries complained of by plaintiff; that Giroir was not at fault which was a cause in fact of the injuries complained of by plaintiff; but that Effie Me-lancon was at fault and that this was a cause in fact of the injuries complained of by plaintiff. The jury further fixed the percentage of fault of each of the parties as follows:
(a) J.P. Thibodeaux, Inc.0%
(b) Giroir Home Builders, Inc.0%
(c) Effie Melancon.100%
Plaintiff has appealed. We affirm. As was stated in Campbell v. Tidwell, 407 So.2d 1359, 1362 (La.App. 3rd Cir.1981):
“Our law is well settled that where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s determination, on review the appellate court should not disturb this finding unless it is clearly wrong or manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).”
After carefully reviewing the record, we do not find that the jury’s decision was clearly wrong or manifestly erroneous.
On the morning of May 14,1984, plaintiff took her car to Thibodeaux’s to be serviced. She went into the customer lounge to wait for the work to be done. The only entrance-exit door to the lounge, which is an exterior door, has a 3y2-inch step on the outside of the door. On being called to pick up her car, plaintiff left through the door which was being held open for her by an employee of Thibodeaux. Plaintiff missed the 3y2-inch step down, lost her balance, attempted to grab the door and fell to her knees. Two employees (Beverly Diane Hargrave and Donat J. Landry, Jr.) helped plaintiff arise and lifted her pants legs to check her knees. Plaintiff testified that her knees were bleeding but that she was so embarrassed she just told the employees that she was alright. The two employees each testified that there were red marks on her knees but the skin was not broken and that plaintiff assured them she was alright. The employees (neither of whom still worked for Thibodeaux at the time of trial) also each testified that when plaintiff was going through the door she was looking back over her shoulder and talking to someone in the lounge instead of watching where she was going. There was testimony that plaintiff commented to the effect: “That was silly of me. I just wasn’t watching where I was going.” Plaintiff testified that she was looking straight ahead at one of the employees who was holding some papers out to her. Plaintiff contends the fall aggravated her prior asymptomatic neck and low back problems.
Plaintiff attempted to show that the 3y2-inch step constituted an unreasonably hazardous condition for which defendants should be held strictly liable and that defendants were negligent in failing to warn her of the step. The jury held in favor of defendants, finding that the step was not unreasonably dangerous and that plaintiff was 100 percent at fault for her injuries. Plaintiff appeals the judgment contending the trial court erred in permitting defendants to use an expert witness from the State Fire Marshal’s Office, in finding plaintiff did not carry her burden of proof under theories of strict liability and negligence, and in refusing plaintiff’s proffer of medical records to show causation.
DEFENDANTS’ EXPERT WITNESS
Plaintiff contends the trial court erred in allowing defendants to use Clinton Dobson, *258 an architectural planner from the State Fire Marshal’s Office, as an architectural expert. Plaintiff alleges that Dobson was a surprise witness because defendants did not give notice of their intent to call him as a witness until after trial began, thus violating the deadline set in the pretrial order and the duty to continually supplement answers to interrogatories.
Initially, we note that defendants did file a supplemental answer to their interrogatories declaring their intent to call Mr. Dobson as an expert witness, although it was filed after the court’s deadline. The pretrial order controls the subsequent course of the trial unless modified at the trial to prevent manifest injustice. LSA-C. C.P. art. 1551. Much discretion is left to the trial judge in this matter. Bourg Dry Dock & Serv. Co., Inc. v. Lombas Industries, Inc., 393 So.2d 203 (La.App. 1st Cir.1980). We note that defendants objected to some of plaintiff’s expert witnesses on the same grounds as those urged by plaintiff. The trial judge permitted plaintiff to use her experts. We do not find that the trial judge abused his discretion in allowing defendants to introduce their expert’s testimony.
Plaintiff also contends that she was prejudiced by defendant’s use of an expert from the State Fire Marshal’s Office since he gave defendants’ case the weight of official state approval even though the approval was “ex post facto.” Essentially, plaintiff argues (although she failed to show) that the architectural plans for the customer lounge were never approved by the State Fire Marshal’s Office prior to construction. However, Dobson did not testify as to whether the plans were approved or not since he did not approve them himself. Dobson only testified that in his expert opinion the step conformed to the construction standards prevailing at the time the customer lounge was built. He did not give “official” approval to the customer lounge.
Plaintiff also argues that Dobson’s “ex post facto” approval of the step is in violation of the construction standards. However, Dobson only gave his expert opinion as to the correct interpretation of the building codes. The fact that his interpretation conflicts with plaintiff’s expert’s interpretation does not mean that Dobson is wrong. Therefore, we do not find that defendants have “circumvented” the building codes through “ex post facto” approval of the step by Dobson.
STRICT LIABILITY
Plaintiff argues in this assignment that the jury erred in finding that she did not carry her burden of proving the step was a vice or defect in the building which rendered defendants strictly liable for her injuries. Plaintiff contends that defendants are strictly liable because the step violated the Life Safety Code and Thibodeaux failed to have its plans approved by the State Fire Marshal’s Office.
Plaintiff alleges that defendants failed to have the plans for the customer lounge approved prior to its construction and points out that defendants have not shown that they were approved. However, plaintiff has the burden of proving her allegations and we do not find that she has done so. No plans for the customer lounge were introduced at trial because no one was able to find them. However, the building permit was introduced and testimony was adduced that a building permit is not given until the State Fire Marshal’s Office approves the plans. From the evidence, we cannot infer that the plans were never approved or that the state officials failed to properly carry out their duties.
Second, plaintiff alleges that use of a 3V2-inch step instead of a ramp was a violation of the Life Safety Code and the Southern Building Code and therefore constituted a defect. We find that the 1976 Life Safety Code, which was in effect at the time the customer lounge was built, permits the use of one step at an exterior doorway to effect a change in level up to 8 inches lower at the outside. The purpose of the step is to prevent a buildup of water, snow or ice. Plaintiff failed to introduce into evidence all the relevant rules in the 1979 Southern Building Code and therefore *259 did not carry her burden of proving that defendant’s step violated that code.
Therefore, we hold that the jury could reasonably have determined that plaintiff failed to carry her burden of proving that defendant’s architectural plans were never approved by the State Fire Marshal’s Office and that the step in the customer lounge doorway violated applicable building safety codes.
NEGLIGENCE
Plaintiff contends the jury erred in finding that she did not carry her burden of proving that defendants were negligent in failing to provide adequate warning of the step. The riser of the step was painted yellow, but it was not visible to someone leaving the lounge and walking down the step. Plaintiff argues that warning signs should have been posted.
The customer lounge was built in 1981. Thibodeaux and two of his former employees testified that they were not aware of anyone else having fallen down the step. Plaintiff had been in the lounge once before and had walked up the step to enter the lounge on the present occasion. The two former employees, who were eyewitnesses to plaintiff’s fall, testified that plaintiff was looking back over her shoulder and talking to someone behind her in the lounge as she left. Plaintiff denies that she was talking to anyone but admits that she was looking straight ahead of her at one of the employees and did not look at the ground in front of her.
This is not a case of a plaintiff being distracted by a display of merchandise. This did not involve an 8-inch step-down in the interior of a building. Morgan v. Hartford Accident and Indemnity Company, 402 So.2d 640 (La.1981). This accident occurred in daylight as the plaintiff was leaving the customer lounge to go outside. The jury, while deliberating, asked for and were allowed to review pictures of the scene (plaintiff’s own exhibits). The pictures depict what appears to be a three or four inch wide threshold apparently made of anodized aluminum clearly demarcating the exit. The jury saw and heard the witnesses and saw all of the exhibits. The jury apparently found that, in any event, plaintiff did not look where she was walking. In Campbell, supra at page 1362, this court stated the duty of pedestrians to observe their path:
“Plaintiff was a pedestrian and as such is held to have seen that whieh she should have seen. A pedestrian is not required to look for hidden dangers but she is bound to observe her course and to see if her pathway is clear. A pedestrian is held to have seen those obstructions in her pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Boutte v. Pennsylvania Millers Mutual Insurance Company, 386 So.2d 700 (La.App. 3rd Cir.1980); Artigue v. South Central Bell Telephone Company, 390 So.2d 211 (La.App. 3rd Cir.1980), writ denied 396 So.2d 917 (La.1981).”
We find that the trial court did not manifestly err in finding defendants free from negligence under the circumstances of this case. The sole proximate cause of plaintiff’s accident and resulting injuries was her own negligence in failing to look where she was going.
HOSPITAL RECORDS
Plaintiff assigns as error the trial judge’s refusal to admit into evidence some of plaintiff’s medical records on the basis that they did not pertain to her accident-related injuries. In view of our holding that defendants are not liable to plaintiff for her injuries, this issue is moot and will not be discussed.
CONCLUSION
For the reasons given above, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.